

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY NEW, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06 C 2562 ) ) Honorable Charles R. Norgle |
| VERIZON COMMUNICATIONS, INC., | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is the Defendant Verizon Communications, Inc.'s ("Verizon") motion for summary judgment against Plaintiff Larry New ("New"). For the following reasons, the motion is granted.

## I. BACKGROUND

### A. FACTS

The following facts are taken from the administrative record and the documents appended thereto. From December 2000 until May 6, 2004, New worked as a senior network engineer with MCI, Inc. ("MCI"), which Verizon now owns. During that time, MCI maintained a contract to provide telecommunications services to BP Amoco ("BP Contract") and, in that regard, established a distinct branch of employees whose sole function was to service the BP Contract. This branch was known internally as the MCI & BP Amoco Professional Services Organization and referred to as the "PSO." MCI assigned New to work in the PSO unit.

On July 21, 2002 MCI filed for bankruptcy protection under Chapter 11. As part of the bankruptcy, MCI sought to restructure the BP Contract. Accordingly, MCI and BP Amoco

entered into an amended General Services Agreement ("GSA"), through which the employees assigned to service the BP contract – the PSO employees – would no longer serve as MCI employees. Rather, three scenarios existed for the PSO employees. See Shopfner Ltr., Def.'s Rule 56.1 Statement, Ex. 3 at 7. Approximately fourteen employees would receive offers from BP Amoco, who agreed to match their MCI salary and benefits. Id. Approximately thirty-eight employees would be offered employment from a third-party vendor, who, in turn, would continue to service the BP Contract in place of MCI. Id. Any employees left over would be terminated and would not receive offers from either BP Amoco or the third-party vendor. Id. The parties ultimately chose a company called "Getronics" as the third-party vendor to service the BP Contract.

On May 6, 2004, pursuant to the GSA, MCI terminated New's employment, along with fifty-six other MCI employees who worked in the PSO unit. The next day, on May 7, 2004 Getronics interviewed and hired New and many other employees from MCI pursuant to the GSA. According to company correspondence, the PSO employees' transition to Getronics was understood as a "'same desk' conversion" and that "the job duties and responsibilities for the transitioning employees under the [GSA were] expected to remain the same," Def.'s Rule 56.1 Statement, Ex. 3 at 7-8, although New denies that they did.

On June 3, 2004, in light of his termination from MCI, New sent a letter to MCI's Severance Plan Committee (the "Severance Committee") that requested a review of his claim for eligibility of severance pay. Id. at 43. The Severance Committee, in response, referenced MCI's Severance Plan and Summary Plan Description ("MCI Plan") to determine New's eligibility to receive severance payments. There, under a section entitled "Eligibility for Severance Benefits," the MCI Plan stated:

> You will not be eligible for Severance Benefits if your employment ends because your division, plan, location or other business unit is sold (by stock sale, asset sale or otherwise), leased, outsourced, or subcontracted to another entity, or merged into another entity and you become employed by such entity in a substantially similar position within 30 days of such event.

MCI Plan, Ex. 3 at 32-33. The Severance Committee determined that under its restructuring agreement with BP Amoco New's business unit had been outsourced to Getronics and that New became employed in a substantially similar position with Getronics within thirty days of the outsourcing. See Denial Letter, Ex. 3 at 161. As a result, New fell into the category of employees that were not entitled to severance benefits; therefore, in a letter dated September 30, 2004, MCI denied his claim. Id.

On November 18, 2004 New appealed the Severance Committee's decision. In a thirteen-page letter in support of his appeal, New raised a number of issues with regard to the Severance Committee's administration of MCI's severance plan. See New Appeal, Ex. 3 at 73-85. For instance, New disagreed with the Severance Committee's determination that his business unit was, in fact, outsourced. New pointed out that prior to receiving the Severance Committee's denial letter he previously had not heard the term "outsource" to describe his leaving MCI to become an employee of Getronics. New also claimed that MCI repeatedly refused to provide him with various documents that he requested in light the denial of benefits. Id. at 78-82. Finally, New expressed confusion about assurances made by unidentified persons with MCI's severance hotline that he would be entitled to benefits. On this point, New explained that on several occasions he spoke with MCI's hotline representatives, who suggested that New was qualified to receive severance payments under the MCI Plan. In light of these assurances, New explained in his letter that the Severance Committee's decision to deny him benefits caught

3

him by surprise. But, aside from New's representations, the details of New's phone calls to the MCI severance hotline remain a mystery.

On January 6, 2005 the Severance Committee denied New's appeal, citing the MCI Plan's eligibility statement and explaining that New is ineligible to receive severance benefits because his employment with MCI ended and he was subsequently employed by Getronics in a similar position. With that, New turned to the federal court.

## B. PROCEDURAL HISTORY

New, operating *pro se*, initially filed his complaint in this Court on May 8, 2006 and thereafter filed an amended complaint on November 17, 2006. In his amended complaint, New asserted three claims against Verizon. He first alleges a violation of § 502(a)(1)(B) of the Employment Retirement Income Security Act ("ERISA") for the company's wrongful denial of severance benefits under the MCI Plan. New further alleges a violation of ERISA, 29 U.S.C. § 1132(c), for MCI's failure to provide him with all of the documents that he requested in a timely fashion during the administrative process. Finally, New alleges a state-law "breach of implied contract" claim based on MCI's denial of severance benefits in spite of the assurances made by MCI's hotline representatives.

On August 23, 2007 the Court granted Verizon's motion to strike several paragraphs of the amended complaint, which the Court deemed immaterial pursuant to FED. R. CIV. P. 12(f). These included any factual details surrounding New's prior employment at MCI, allegations regarding the MCI bankruptcy and allegations regarding communications with individuals on the Severance Committee. On August 26, 2008 Verizon moved for summary judgment. Verizon's motion is fully briefed and before the Court.

4

## II. DISCUSSION

### A. STANDARD OF DECISION

Summary judgment is proper when there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, and where the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Sides v. City of Champaign, 496 F.3d 820, 826 (7th Cir. 2007) (quoting Brummett v. Sinclair Broad. Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005)). In determining whether a genuine issue of material fact exists, all facts are construed in favor of the nonmoving party, who, in this case, is New. See Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 780 (7th Cir. 2007). But the court's favor toward the nonmoving party does not relieve that party of the obligation to "do more than simply show that there is some metaphysical doubt as to the material facts." Waukesha Foundry, Inc. v. Indus. Eng'g, Inc., 91 F.3d 1002, 1007 (7th Cir. 1996) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince the trier of fact to accept its version of the events." Steen v. Meyers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)). The mere existence of some alleged or possible factual dispute will not defeat an otherwise properly supported motion for summary judgment, as speculation will not suffice. Amadio v. Ford Motor Co., 238 F.3d 919, 927 (7th Cir. 2001); see also Borcky v. Maytag Corp., 248 F.3d 691, 695 (7th Cir. 2001).

## B. ERISA - DENIAL OF SEVERANCE BENEFITS

Verizon first argues that New's ERISA claim for denial of severance benefits fails as a matter of law because the MCI Plan Administrator made a rational determination, in its discretion, that the PSO had been outsourced, which led to the rejection of New's severance claim. In response, New asserts that the MCI Plan Administrator's determination that the PSO had been outsourced was unfounded and therefore wrong. As a result, New maintains that the administrator abused its discretion in rejecting his claim for severance. The issue for this Court to decide, then, is whether the MCI Plan Administrator's decision to deny New's claim for severance was reasonable, in light of the administrator's determination that the PSO had been outsourced. The Court finds that it was.

But before the Court reaches that issue, it must first determine whether the MCI Plan confers discretion to the Plan Administrator in interpreting the plan's provisions and in determining a claimant's eligibility for benefits. If it does, then the Court must review the Plan Administrator's decision to deny New severance benefits under a more deferential standard. It is well established that a challenge to the denial of benefits under § 1132(a)(1)(B) must be reviewed *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Sisters of the Third Order v. Group Health Benefit Trust, 901 F.2d 1369, 1371 (7th Cir. 1990). A plan need not use "magic words" to give the administrator discretionary authority, but must contain clear language that indicates that a discretionary determination is envisioned. See, e.g., Patton v. MFS/Sun Life Fin. Distrib., Inc., 480 F.3d 478, 486 n.5 (7th Cir. 2007) (noting the Seventh Circuit's "model clause," which grants discretion to

6

the plan administrator and therefore limits judicial review of the administrator's decisions);

Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000).

Here, The MCI Plan expressly states:

> A committee appointed by the Company's most senior human resources officer (the "Committee") administers the Plan. The Committee serves as the "Plan Administrator" and "Named Fiduciary" for the Plan, as those terms are defined under the Employee Retirement Income Security Act ("ERISA").
>
> ***The Committee has the power to implement, apply, interpret and construe the Plan in its sole and absolute discretion.*** The Committee's powers include, among other things, the construction of all Plan provisions and the determination of eligibility for all benefits under the Plan. The Committee may appoint delegates, including any subcommittees, that it deems appropriate to assist it in performing its duties under the Plan.

Def.'s Rule 56.1 Statement, Ex. 1, MCI Summary Plan Description [emphasis supplied]. Neither party contests that this language gives the administrator broad discretion in managing and interpreting the plan. As such, the Court shall review New's denial of benefits under the highly-deferential arbitrary and capricious standard. Williams v. Aetna Life Ins. Co., 509 F.3d 317, 321 (7th Cir. 2007) (citing Hackett v. Xerox Corp. Long-Term Disability Income, 315 F.3d 771, 773 (7th Cir. 2003)).

Under the arbitrary and capricious standard, "the administrator's decision will only be overturned if it is 'downright unreasonable,'" and not merely incorrect. Williams, 509 F.3d at 321; Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting Carr v. Gates Health Care Plan, 195 F.3d 292, 295 (7th Cir. 1999)). The reviewing court's role under the arbitrary and capricious standard is a limited one, as it represents the least demanding form of judicial review. James v. General Motors Corp., 230 F.3d 315, 317 (7th Cir. 2000); Hupp v. Metromail Corp. Special Severance Plan, 133 F. Supp. 2d 681, 688 (N.D. Ill. 2001). The Seventh Circuit has explained that "[i]t is not the function of the

7

district court to decide whether it would have reached the same conclusion as the committee or to substitute its judgment for the judgment of the committee." Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 828 (7th Cir. 2004). And, although this deferential standard does not amount to a rubber stamp, the district court shall overturn the administrator's decision where the committee's interpretation of the plan "defies all common sense." Id. (citing Hess v. Hartford Life & Accident Ins. Co., 274 F.3d 456, 461 (7th Cir. 2001)). In fact, a reviewing court should not overturn a plan administrator's decision so long as (1) it is possible to offer a reasoned explanation, based on evidence, for a particular outcome, (2) the administrator based its decision on a reasonable explanation of the relevant plan documents, or (3) the administrator based its decision on a consideration of the relevant factors that encompass the important aspects of the problem. Hess, 274 F.3d at 461; Cuddington v. N. Ind. Pub. Serv. Co., 33 F.3d 813, 817 (7th Cir. 1994). With these standards in mind, the Court turns to the MCI Plan Administrator's decision.

The MCI Plan Administrator reviewed New's appeal and informed New of the Severance Committee's decision in a letter dated January 6, 2005. There, the Plan Administrator upheld the denial of benefits and explained that after a careful and independent review of New's claim New was ineligible for severance as a result of his employment with Getronics. Although it is not explicitly stated, it is clear from the letter that the Plan Administrator based his decision on several relevant documents, including the MCI Plan, New's employment records, the previous denial letter and the General Services Agreement between MCI and BP Amoco. The Plan Administrator specifically quoted the passage from the MCI Plan that he deemed relevant to his decision and demonstrated why that passage was relevant, given MCI's arrangement with BP Amoco and its affect on the PSO employees. In this way, the Plan Administrator not only

adequately considered the factors relevant to his decision, but he made a rational connection between the interpretive issue – New's eligibility for severance – and the relevant documents. This is more than sufficient under the discretionary standard of review.

Moreover, there is nothing in the record to support New's argument that the Plan Administrator's determination that the PSO employees had been "outsourced" was arbitrary and capricious. Given the agreement between BP Amoco and MCI, the Plan Administrator's interpretation seems consistent with the generally understood meaning of the word "outsource." The GSA contained a number of caveats that governed Getronic's offer of employment to MCI employees. For instance, Exhibit D to the GSA, which the parties' titled the "PSO Termination Plan," authorized BP Amoco to contract with a third-party vendor, so that that third-party vendor could offer employment to MCI employees. See Def.'s Rule 56.1 Statement, Ex. 3 at 62. Thereafter, BP Amoco was required to disclose to MCI the material terms and conditions under which the third-party vendor would employ the former MCI employees. Then, MCI would determine whether those employees were entitled to severance, and BP Amoco agreed to reimburse MCI for the severance costs. On a plain reading of Exhibit D, it is a plausible interpretation that the duties of MCI were effectively transferred to a third-party vendor, so that the third-party vendor would continue to serve the BP Contract in place of MCI.

In this light, the Court cannot say that the Plan Administrator's conclusion that the PSO employees were outsourced was "downright unreasonable." And, even if the Plan Administrator's interpretation was a mistake, this alone is not enough to show that the decision was arbitrary and capricious. The record in this case contains substantial evidence supporting the Plan Administrator's conclusion that New and his colleagues were outsourced, and thus ineligible to receive severance benefits under the MCI Plan. There simply is nothing in the

9

record to support New's argument that the Plan Administrator's decision was made in bad faith, or otherwise. At most, New's arguments as to whether he was "outsourced" show a different, plausible interpretation of the Plan documents, but they do not overcome the "high hurdle" of the arbitrary and capricious standard. Jacobs v. Xerox Corp. Long Term Disability Income Plan, 356 F. Supp. 2d 877, 890-91 (N.D. Ill. 2005) (Filip, J.). For these reasons, summary judgment is granted as to New's denial of benefits claim.

## C. ERISA – FAILURE TO TURN-OVER REQUESTED DOCUMENTS

New further contends that he is entitled to civil penalties pursuant to § 1132(c) of ERISA in light of the Plan Administrator's failure to provide him with the myriad of documents that he requested during the claims process. Section 1132(c)(1) requires plan administrators to provide "a copy of the latest summary plan description, plan description, or other instruments under which the plan is established or operated" by mailing the requested materials to the participant within thirty days after the request. 29 U.S.C. § 1132(c)(1) (2004); Jacobs, 356 F. Supp. 2d at 894. Should the plan administrator fail to do so, the participant is entitled to civil penalties. Verizon claims that New is not entitled to civil penalties because MCI provided to New all of the documents and materials that it was required to turn over under the statute. Specifically, MCI provided New with a copy of the MCI Plan, a copy of MCI's Code of Ethical and Business Conduct, a copy of New's claim letter and a redacted version of the amended GSA between MCI and BP Amoco. According to Verizon, this is all that ERISA required, and thus MCI had no duty to produce any additional documents outside the scope of § 1132(c).

ERISA section 1024(b)(4) outlines the documents that plan administrators are required to disclose to claimants pursuant to § 1132. That section states:

> The administrator shall, upon request of any participant...furnish a copy of the latest updated summary, plan description, and the latest annual report, any

terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). The Seventh Circuit determined that § 1024(b)(4)'s catch-all provision, which requires disclosure of "other instruments under which the plan is established or operated," is to be narrowly construed. Ames v. Am. Nat'l Can Co., 170 F.3d 751, 758-59 (7th Cir. 1999). Accordingly, unlike traditional discovery, a plan administrator is not required to produce any and all documents that may be relevant to the company's ERISA plan and the administrator's decision under the plan. Id. Rather, the administrator is required to produce only those formal documents that establish or govern the plan. Id. at 758. As it turned out, this is precisely what MCI did.

New, however, asserts that MCI violated § 1024(b)(4) because it failed to comply with his entire request. During the claims process, New served on MCI a broad request for the production of documents that he insisted were relevant to his severance claim. He outlined his requests in his November 18, 2004 letter of appeal. See Ltr. of Appeal, Def.'s Rule 56.1 Statement, Ex. 3 at 78-81. Upon review of the letter, it is clear that many of these documents are either immaterial to New's claim for severance, or unrelated to how the MCI Plan was established or operated. For example, New requested: all documents related to his application for employment with MCI; copies of MCI's layoff policies and procedures; all internal and external e-mails, letters and correspondence related to MCI's termination of the PSO; all communications related to New and all personal information about New; all recordings of conversations with the MCI severance hotline; all statistical information for employees that lost employment with MCI; and copies of all MCI petitions to the bankruptcy court. Yet, under ERISA, New was not entitled to these documents. MCI produced only those documents that ERISA required, and Verizon is correct to say that MCI was under no obligation to provide New

11

with any documents outside the scope of § 1024. Accordingly, New's claim pursuant to § 1132(c) claim fails as a matter of law.

As a final thought, and in abundance of caution, the Court acknowledges that no evidence exists that supports the argument that MCI was somehow neglectful or deceitful in declining to comply with New's request for immaterial documents. It is well-settled that even in the event an administrator violates § 1132(c)(1), such a violation does not automatically trigger the imposition of civil penalties. See Harsch v. Eisenberg, 956 F.2d 651, 662 (7th Cir. 1992) (noting that whether sanctions are awarded is a matter within the trial court's discretion). The imposition of civil penalties is within the discretion of the Court, and may be warranted if there is a finding of bad faith on behalf of the administrator or prejudice to the claimant. Id. at 662; Meredith v. Allsteel, Inc., 814 F.Supp. 657, 663 (N.D. Ill. 1992). In this case, the Court finds that there is no evidence of bad faith or prejudice to New.

Again, MCI turned over to New the MCI Plan, the company's code of ethics, a copy of New's claim letter and a redacted version of the amended GSA. These documents are those under which the MCI Plan was either established or operated. MCI simply chose not to provide New with the slew of immaterial documents that he requested. Regardless, there is no dispute MCI complied with § 1024(b). On these circumstances, the Court agrees with Verizon that there is no reasonable basis upon which to impose a penalty under § 1132(c)(1).

## D. COMMON LAW – BREACH OF IMPLIED CONTRACT

New brings his final claim for severance benefits under a state-law theory of breach of implied contract. In response, Verizon finds no reason to challenge the merits of New's claim, but rather points out that ERISA preempts separate state-law causes of action arising out of the administration of an ERISA plan. See Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 410 (7th Cir.

2004) (noting that ERISA preempts state-law theories of recovery). Indeed, "the ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund, 538 F.3d 594, 595 (7th Cir. 2008) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004)). Thus, where a claimant seeks to recover severance benefits under a company's ERISA plan, § 502(a) of ERISA is the claimant's sole method of relief, where the breach of contract claim requires the Court to interpret or to apply the terms of an ERISA plan. Bowles v. Quantum Chemical Co., 266 F.3d 622, 630-33 (7th Cir. 2001).

Through his state-law claim for breach of implied contract, New seeks to recover severance benefits and to otherwise enforce his rights under the MCI Plan. To do so, instead of relying on the terms of the Plan itself, New bases his claim on statements made orally to him by persons affiliated with MCI's severance hotline. New, in essence, claims that these statements created an implied contract that entitled him to severance benefits established under the MCI Plan. And, according to New, the damage award remains the same. In the event New succeeds in proving that an implied contract existed, which is still an open issue, New requests that MCI pay him severance benefits under the MCI Plan. As such, there is no question that New's state-law claim relies on and relates to the existence of the MCI Plan, which the Court would ultimately have to interpret in adjudicating New's claim and in assessing his damages. New's claim for breach of implied contract is therefore preempted. See Collins v. Ralston Purina Co., 147 F.3d 592 (7th Cir. 1998) (establishing that claims for breach of contract are preempted by ERISA and should be dismissed when they relate to or have a connection with a plan governed by ERISA); Tomczyk v. Blue Cross & Blue Shield of Wis., 951 F.2d 771, 777 (7th Cir. 1991)

13

(noting that state law breach of contract claims are preempted by ERISA). Summary judgment is granted as to New's breach of implied contract claim.

Nevertheless, assuming that ERISA preemption does not apply, New's claim for breach of implied contract would ultimately fail. In Illinois, in order to prove an implied contract the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract. See, e.g., Nissan N. Am. v. Jim M'Lady Oldsmobile, Inc., 486 F.3d 989, 996 (7th Cir. 2007) (citing Illinois law as to the requirements for an implied contract); Brody v. Finch Univ. of Health Sci./The Chi. Med. Sch., 698 N.E. 257, 265 (Ill. App. Ct. 1998) ("A contract implied in fact contains all the elements of an express contract, as well as a meeting of the minds."). This case is entirely void of evidence to support the existence of such a contract.

In support of his claim, New states that a "reasonable man would likely think he is qualified for severance" after having been told by unidentified individuals that he qualifies for severance under the MCI Plan. Pl.'s Resp. to Def.'s Memo. at 22. But this "reasonable belief," based on hearsay statements, does not establish the existence of an implied contract. New fails to present any admissible evidence by way of deposition testimony, affidavits, declarations, documents, admissions or other communications to support the basic elements of an express contract between two parties, much less an implied contract between himself and MCI. On the evidence presented, there was no meeting of the minds; there was no intent to be bound; and there was no mutual assent. In the end, there is nothing in the record, aside from New's self-serving arguments, from which a reasonable jury could draw an inference that an implied contract existed between the parties. Summary judgment is warranted for this reason alone. See Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Products Co., Inc., 255 F.3d 460, 463 (7th

14

Cir. 2001) (rejecting the existence of an implied contract where no evidence existed of an intention by both sides to make a legally enforceable commitment); Sanchez & Daniels v. Koresko & Assoc., 04 C 5183, 2005 WL 4888082, at *5 (N.D. Ill. Dec. 5, 2005) (granting summary judgment where the evidence was insufficient to give rise to a genuine issue of fact as to the existence of an implied contract); Hanekamp v. McKesson Corp., 02 C 0112, 2003 WL 21360808, at *10 (N.D. Ill. June 12, 2003) (granting summary judgment where implied contract for severance payments was unsubstantiated).

### III. CONCLUSION

For the reasons stated above, Defendant Verizon Communications Inc.'s Motion for Summary Judgment against Plaintiff Larry New is granted in its entirety.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: 11-20-08